In re SOUTHERN INDUSTRIAL
BANKING CORPORATION,
d/b/a Daveco, Debtor.

Thomas E. DuVOISIN, Liquidating
Trustee, Plaintiff,

v.

Peggy R. AVERY, Defendant.

No. CIV-3-89-0326.

United States District Court,
E.D. Tennessee, N.D.

Dec. 19, 1989.

J. Thomas Jones, Bernstein, Stair & McAdams, and Jeffrey S. Norwood, Knoxville, Tenn., for plaintiff.

Anthony M. Avery, Knoxville, Tenn., for defendant.

## MEMORANDUM OPINION

JORDAN, District Judge.

This is an appeal under 28 U.S.C. § 158(a) from a final summary judgment entered by the United States Bankruptcy Court for the Eastern District of Tennessee in an adversary proceeding. A brief review of the procedural history of this adversary proceeding is required in order to address adequately the issues presented on appeal. The plaintiff is the trustee of a liquidating trust established in the course of the reorganization of Southern Industrial Banking Corporation ("SIBC"). In the fulfillment of his duties, the plaintiff commenced this adversary proceeding, along with hundreds of others, under 11 U.S.C. §§ 547 and 550 to recover as preferences the amounts paid by SIBC to the holders of investment certificates issued by SIBC who presented their certificates for payment within 90 days before the commencement of SIBC's case in bankruptcy.

In this adversary proceeding, the plaintiff filed a motion for summary judgment under Bankruptcy Rule 7056 on December 16, 1988. (Rec. # 3.) (References to "rec. #" are to the numbered documents included in the record on appeal compiled by the parties under Bankruptcy Rule 8006.) Attached to this motion was the plaintiff's affidavit (rec. # 4), in which the plaintiff stated in part, "SIBC's records also show that [the defendant] redeemed ... five investment certificates [with a total face value in the amount of $23,251.83] on or about February 14, 1983. Defendant Peggy Avery received check number 10238 in the amount of $23,251.83, representing payment of principal on the five certificates. This check was returned by City and County Bank of Knox County [the drawee] for insufficient funds on February 17, 1983 and ultimately paid by City and County Bank on February 23, 1983."

A notice of hearing setting argument on the plaintiff's motion for summary judgment on January 18, 1989 was issued on December 16, 1988. (Rec. # 28.) On January 17, 1989, the defendant responded with a motion for summary judgment of her own (rec. # 8), supported by her affidavit. (Rec. # 9.) The defendant also moved to amend her answer. (Rec. # 10.) The defendant also filed a brief, to which she attached a copy of the check drawn by

SIBC on City and County Bank of Knox County ("C & C"), showing that it was returned because of insufficient funds ("NSF"), a copy of a cashier's check for the same amount drawn by C & C to her order, and a letter from a Federal Deposit Insurance Corporation ("FDIC") attorney stating that the FDIC had no record of a loan made by C & C to SIBC to fund the cashier's check. (Rec. # 30, ex. E; *see also* rec. # 14.)

The Bankruptcy Court heard argument on January 18, 1989, following which the Bankruptcy Court issued its order awarding summary judgment to the plaintiff, denying the defendant's motion for summary judgment, and denying the defendant's motion to amend her answer. (Rec. # 18.) This appeal followed.

The defendant's affidavit is, of course, the document which must be scrutinized most closely in determining whether the Bankruptcy · Court erred in ruling that there is no genuine issue of material fact left for trial in this adversary proceeding. In her affidavit, the defendant states that on February 14, 1983, she "became aware of the financial troubles of [SIBC] by watching television news reports," and that she went immediately to SIBC to demand the withdrawal of all funds deposited by her with SIBC. SIBC drew a check in the amount of $23,251.83 on C & C payable to the defendant, and delivered it to her. She deposited this check with her depository bank. On February 23, 1983, the depository notified her that the check had been presented for payment on February 17, 1983, and dishonored for NSF.

The defendant states that she then returned to SIBC and demanded cash, that a Mr. Travis, represented to her to be a vice president of SIBC, told her that SIBC did not have sufficient cash on hand to cover the NSF check, and that Mr. Travis then left SIBC, and later returned with a cashier's check drawn by C & C in the proper amount, payable to the defendant. The defendant refused to accept the cashier's check, and demanded cash instead. The defendant instructed Mr. Travis to present the cashier's check for payment, and to

bring her back the cash proceeds, which he did, delivering to her on February 23, 1983 $23,251.83 in cash and coin. The defendant concludes her affidavit by stating, "That I do not have now, nor have I ever, had any personal knowledge of the exact circumstances surrounding [C & C's] issuance of the cashier's check to me, other than its purpose was to satisfy [SIBC's] debts to me in full."

It is apparent from a comparison of the plaintiff's and the defendant's affidavits that no issue was presented concerning whether the plaintiff had made a prima facie showing of the 11 U.S.C. § 547(b)(1)–(5) elements of a preference, other than whether any interest of SIBC in property was transferred to the defendant. Whatever was transferred to the defendant, who was certainly a creditor of SIBC by reason of the issuance of the investment certificates held by her, was to or for her benefit, and for on account of antecedent debt created by the contractual relationship evidenced by the investment certificates.

The defendant received her money on or within 90 days before the date of the commencement of SIBC's case in bankruptcy. The presumption provided by § 547(f) established SIBC's insolvency on the date that the defendant received the cash. The defendant did not present by affidavit or otherwise any evidence to rebut this presumption. Nor did she present any evidence to show an issue of fact under § 547(b)(5) with respect to whether she received more than she would have in the course of a bankruptcy liquidation of SIBC. The fact that the defendant received in full the total face value of her investment certificates indicates why this was not an issue.

When a motion for summary judgment is made and supported as provided in this Rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this Rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, sum-

mary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e). *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The defendant's affidavit, as much as the plaintiff's, reduced this adversary proceeding to the issue whether the cash delivered by Mr. Travis to the defendant was an interest in property of C & C, and not of SIBC.

A cashier's check is a draft drawn by a bank as the drawer upon itself as the drawee. In the ordinary course of banking transactions, the remitter, which is the entity which obtains the cashier's check in order to satisfy its obligation owed to a third party, "buys" the cashier's check from the drawer/drawee bank, either by transferring cash to the drawer/drawee bank in exchange for its issuance of the cashier's check, or by incurring an obligation to the drawer/drawee bank. *See, generally,* 6 MICHIE ON BANKS AND BANKING ch. 12, § 13 (1975 perm. ed.).

In this case, it is evident from the appellant's own affidavit and from exhibit 2 to her brief [doc. 2] that SIBC as the remitter obtained a cashier's check from C & C as the drawer/drawee bank, payable to the order of the appellant. However, the appellant argues in part, it appears, that no interest in property of SIBC was transferred in this transaction. This argument is based upon her affidavit testimony that Mr. Travis, the vice-president of SIBC, told her on February 23, 1983 that SIBC did not have enough cash to cover her withdrawal demand, that she heard Mr. Travis telephone at least two other financial institutions in an attempt to procure funds, and that Mr. Travis stated during at least one of these telephone calls "that Mr. C. H. Butcher, Jr., was supposedly going to invest a substantial amount of money in [SIBC] in the very near future, but that [SIBC] needed someone to pay some money to [the appellant] immediately." (Rec. # 9.) The appellant's argument is also based upon the letter from the FIDC attorney, which states in part that the FDIC has "no record of a loan or loans to SIBC in relation to the [cashier's] check [in issue]." (Rec. ## 14 and 30, ex. E.) One of the appel-

lant's arguments seems to be, then, that C & C simply gave money to SIBC to give to the appellant.

To draw this inference from the evidence presented by the parties in support of their opposing summary judgment motions would require sophistry of the most absurd sort. The only reasonable inference is that SIBC borrowed money from, or incurred an obligation to, C & C in order to obtain the cashier's check for the appellant, regardless of whether C & C's records now in the custody of the FDIC contain any evidence of such an obligation. "[I]f only one reasonable conclusion may be drawn from undisputed facts, a summary judgment may be rendered." *Moore v. New Amsterdam Casualty Insurance Company,* 199 F.Supp. 941, 947 (E.D.Tenn.1961).

The appellant seems to recognize the absurdity of any argument that C & C donated this cash for the benefit of SIBC, and so argues instead that "[w]ith the resulting extinguishment of SIBC's obligations to Avery, and the simultaneous creation of a new debt obligation of SIBC to the C & C Bank, all that occurred was the extinguishment of the Debtor/Creditor relationship between Avery and SIBC, and the simultaneous creation of a new Debtor/Creditor relationship between SIBC and C & C Bank." [Doc. 2 at 17.] This argument might carry some weight had the appellant not, as is admitted in her own affidavit, refused the offered substitute obligation, the cashier's check, and demanded that SIBC pay her in cash. That the cashier's check was refused by the appellant is also shown by the absence of her endorsement on the copy provided by her with her brief. Reduced to its simplest form, the undisputed evidence is that, after SIBC's check drawn to her order was returned NSF, the appellant went to SIBC and demanded cash for her investment certificates, which was paid to her by an officer of SIBC. The only reasonable inference is that SIBC transferred to the appellant some cash which belonged to SIBC.

The appellant argues also that the funds delivered to her by SIBC were funds earmarked for her by C & C, which has the effect of creating a debtor-creditor relationship between her and C & C, and rendering

SIBC an intermediary with a fiduciary duty to deliver the funds to the appellant. As *In re Hartley*, 825 F.2d 1067 (6th Cir.1987), upon which the appellant relies, makes clear, the earmarking doctrine applies to one class of cases in which the substitution of one creditor for another works no diminution of a debtor's estate. However, in order for the doctrine to apply, it must appear that the new creditor, who supplied the credit with which the debtor satisfied in whole or in part one or more antecedent obligations, controlled the disposition of the new credit by choosing the creditor or creditors to whom it was paid.

Accepting that SIBC obtained cash from C & C with which to pay the appellant, there is no evidence in this record that C & C controlled the payment of that cash to the appellant. Whatever control C & C possessed by means of the cashier's check, it gave up that control by apparently exchanging cash for the check in the transaction with Mr. Travis, concerning which the appellant has no evidence. The only reasonable inference is the opposite of the one urged by the appellant: by turning over those most fungible of commodities, currency and coin, to a SIBC officer, C & C gave up any control of the disposition of those assets freshly added to the wealth of SIBC. Again, had the appellant not rejected the cashier's check offered to her, and demanded cash instead, the outcome might have been different. However, the Bankruptcy Court, relying in part upon the appellant's own affidavit, found a sufficient showing of a transfer to the appellant of an interest of SIBC in property upon which to base a summary judgment. This put the burden upon the appellant to show facts which might support the application of the earmarking doctrine, which provides an exception to the law governing the avoidance of preferences. The appellant failed to carry this burden.

*Parker v. Klochko Equipment Rental Company, Inc.*, 590 F.2d 649 (6th Cir.), *cert. denied*, 444 U.S. 831, 100 S.Ct. 60, 62 L.Ed.2d 40 (1979), upon which the appellant relies, must be distinguished. There, the earmarking was in effect supplied by the Michigan statutory law which, in part, imposes a trust in favor of materialmen and mechanics upon funds paid by a general contractor to a subcontractor. The statutory law imposed upon the debtor subcontractor the fiduciary duty to serve as a conduit for the proper application of the funds paid by the general contractor. There was no showing in this case of a similar fiduciary duty imposed by law or by any agreement between C & C and SIBC.

It is true that in *In re Hearn*, 49 B.R. 143 (Bankr.W.D.Ky.1985), the court held that cash and a cashier's check endorsed in blank, given to the debtor by the debtor's mother for delivery to one of the debtor's creditors, did not become property of the debtor, in spite of the fact that, at least briefly, the debtor had unqualified control of the cash and the check. However, in that case, it was "unquestioned" that both the debtor and his mother specifically intended that the check and the cash be paid over to the creditor, and that the debtor incur a substituted obligation to his mother for the loan. *Id.* at 145. The court noted, "While no tangible benefit accrued to the new creditor, the 'insider' status existing between the ... debtor and the new creditor must be viewed as a filial accommodation since no prudent lender would have assumed this position without adequate security to cover the attendant risk." *Id.* at 146. In this case, in contrast, there is no evidence of what C & C and SIBC intended with respect to control of the disposition of the cash given to SIBC, and certainly no evidence of a "filial" duty owed by SIBC to C & C. *In re Plimoth Management, Inc.*, 78 B.R. 1 (D.Mass.1987), cited by the appellant, concerns the allocation of the burden of proof as to whether a transfer was the completion of an assignment (not a preference), or the satisfaction of a loan obligation (a preference), and is of no help to the appellant in this case.

For the reasons stated, the appellant's issues on appeal numbered 1., 2., 3., 4., 5. and 7. (rec. #23) are all found against the appellant. The Bankruptcy Court held properly on the evidence before it, including the appellant's own affidavit, that SIBC made a preferential transfer to the appellant of $23,251.83, and that the appellee Liquidating Trustee is entitled to a summary judgment against the appellant for this

amount plus interest. The Bankruptcy Court was required to treat all of the facts stated in the appellant's affidavit as proved, whether or not the appellee disputed the appellant's veracity. These facts, together with those stated in the appellee's affidavit, established the appellee's case under 11 U.S.C. § 547. There is no evidence in this record which shows that C & C earmarked the cash delivered ultimately to the appellant.

As for the appellant's sixth issue, since summary judgment was justified, the Bankruptcy Court did not abuse its discretion in denying the appellant's 11th-hour motion to amend her answer. An answer cannot serve to respond to a motion for summary judgment. Fed.R.Civ.P. 56(e). Furthermore, as is indicated above, this Court has considered the new evidence upon which the appellant based her motion to amend (*see* rec. ## 12, 13, 14, and 30), which she exhibited to her appellate brief [doc. 2, exs. 1 through 3], without deciding whether, as the appellee contends, this evidence is inadmissible. The appellant's argument in her brief that she is entitled to a separate trial of this adversary proceeding is rendered moot by this Court's affirmance of the Bankruptcy Court's award of summary judgment.

The appellant raised two additional arguments in her reply brief. [Doc. 10.] These are, first, that the Bankruptcy Court erroneously based its summary judgment in part upon an earlier ruling made in several consolidated adversary proceedings that the appellee Liquidating Trustee had established several of the elements of a voidable preference in all of the proceedings brought against investment certificate holders who had withdrawn cash from SIBC during a certain time period, and, second, that the Bankruptcy Court's ruling erroneously denied the appellant's Seventh Amendment right to a jury trial.

The appellant attacks alleged procedural deficiencies in the consolidated adversary proceedings in which it was held that the appellee Liquidating Trustee had established some of the elements required under 11 U.S.C. § 547. It is unnecessary to decide whether the appellant may raise this issue even though it was not included in her Bankruptcy Rule 8006 statement of the issues on appeal. The Court finds that the parties' opposing affidavits filed in this adversary proceeding provide sufficient support for the summary judgment, which this Court affirms, without reference to the earlier adjudication concerning the § 547 elements, rendering this issue moot.

As for the Seventh Amendment issue, not only did the appellant not include this issue in her Rule 8006 statement, she also has not cited to the Court any portion of the record in which it appears that she preserved her right by a timely demand for a jury. *Compare* Fed.R.Civ.P. 38. Assuming the issue to have been raised properly, however, the right to a jury trial is not violated by an award of summary judgment where justified. *Itel Capital Corporation v. Cups Coal Company, Inc.*, 707 F.2d 1253, 1261 (11th Cir.1983) (citation omitted).

For the reasons stated, this Court will affirm the Bankruptcy Court's award of summary judgment.