In re SOUTHERN INDUSTRIAL
BANKING CORPORATION,
Debtor.

Thomas E. DuVOISIN, Liquidating
Trustee, Plaintiff/Appellee,

v.

John E. COKER, Administrator of
the Estate of John Carter Daniels,
deceased, Defendant/Appellant.

No. Civ. 3–92–0168.

United States District Court,
E.D. Tennessee,
Knoxville.

Nov. 16, 1992.

Anthony M. Avery, Knoxville, TN, for plaintiff/appellee.

Jeffrey S. Norwood, Miller & Martin, Chattanooga, TN, John A. Lucas, Hunton & Williams, Knoxville, TN, and J. Thomas Jones, Bernstein, Stair & McAdams, Knoxville, TN, for defendant/appellant.

## MEMORANDUM OPINION

JORDAN, District Judge.

This appeal arises out of an adversary proceeding brought by Mr. DuVoisin, the liquidating trustee appointed pursuant to the confirmed plan of reorganization of the debtor, Southern Industrial Banking Corporation (SIBC), against John Carter Daniels. Mr. DuVoisin's complaint sought recovery as a preference, 11 U.S.C. § 547(b), of the principal and accrued interest paid by SIBC to Mr. Daniels when the latter obtained payment in full of his SIBC investment certificate within 90 days before SIBC became a debtor in bankruptcy.

Mr. DuVoisin moved for summary judgment in the bankruptcy court below, showing by affidavit evidence that Mr. Daniels invested $30,000.00 in an account at SIBC on February 6, 1983, and closed this account on February 17, 1983, receiving SIBC's check drawn on City & County Bank of Knox County to his order in the amount of $30,-117.53. SIBC became a debtor in bankruptcy on March 10, 1983. Anticipating an "ordinary course of business" defense under 11 U.S.C. § 547(c)(2), Mr. DuVoisin also submitted affidavit and deposition evidence to show that from February 14, 1983 to the date it became a debtor, SIBC experienced a run which put its operations in a state of disarray, and prevented it from having an ordinary course of business.

In July, 1989, Mr. Daniels appeared *pro se* for argument on Mr. DuVoisin's motion for summary judgment, but offered no evidence contrary to that submitted by the liquidating trustee in support of this motion. The bankruptcy court therefore appropriately granted the motion from the bench. Bankr.R. 7056. Counsel then appeared for Mr. Daniels[1], and, in September, 1989, filed a motion for reconsideration. When Mr. Daniels moved for reconsideration, the bankruptcy court had not yet entered a judgment in accordance with its ruling on the liquidating trustee's motion.

In support of this motion for reconsideration, Mr. Daniels argued that the documentary evidence submitted by the liquidating trustee showed that Mr. Daniels' withdrawal was in the ordinary course of business, because these documents stated the investment certificate holder's right to withdraw his deposited or invested funds at any time, without penalty or restriction. Mr. Daniels also argued that Mr. DuVoisin had failed to establish the elements of a preference under 11 U.S.C. § 547(b) in this case, and that the award of summary judgment violated Mr. Daniels' Seventh Amendment right to a jury trial, as established in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989).

Mr. Daniels listed in his brief in support of his motion for reconsideration several issues for trial by jury:

whether SIBC was entitled to be a debtor in bankruptcy, or instead was a bank or other financial institution of a type listed in 11 U.S.C. § 109(b)(2);

whether Mr. Daniels had received property of the debtor;

whether the liquidating trustee had established the § 547(b)(5) element of a preference, that Mr. Daniels had received more from SIBC than he would have had it been liquidated under chapter 7 of the Bankruptcy Code;

whether Mr. DuVoisin had established all of the elements of a preference;

"[w]hether the Trustee was in fact appointed and confirmed in accordance with 11 U.S.C. § 1104 where Defendant as a party in iterest (sic) was not given notice of the hearing to appoint such trustee prior to confirmation;"

whether Mr. Daniels' contract with SIBC was void *ab initio* because fraudulently induced;

whether Mr. Daniels had a contractual right to withdraw his money from SIBC at any time, without penalty;

whether the evidence concerning the contract between Mr. Daniels and SIBC established the § 547(c)(2) ordinary course defense;

whether Mr. Daniels had met his burden of proof under § 547(c)(2); and

whether SIBC was actually insolvent when Mr. Daniels obtained his funds.

Mr. Daniels also submitted in support of his motion for reconsideration an affidavit. This was the first and only time that Mr. Daniels responded to Mr. DuVoisin's motion for summary judgment with any evidentiary material. In his affidavit, Mr. Daniels stated that he had a SIBC investment certificate for a principal amount of $29,000.00 which matured on February 6, 1983; that he decided to use this $29,000.00 plus $1,000.00 to open a

---

1. Other counsel had appeared earlier for Mr. Daniels in this adversary proceeding, and had filed an answer on his behalf.

VIP account with SIBC; that he wanted a VIP account because of its feature of allowing withdrawal at any time, without penalty; that part of his reason for desiring this withdrawal feature was that "[he] had just recently had some stock in the United American Bank become worthless and [he] did not completely trust any of the Butcher related banks;" and that on February 17, 1983, he withdrew all of his money in this VIP account, and received SIBC's check in the amount of $30,117.53, with the instruction to exchange it for a cashier's check issued by the drawee bank.

In October, 1989, the bankruptcy court entered judgment on the summary judgment awarded by it in Mr. DuVoisin's favor. On December 1, 1989, the court denied Mr. Daniels' motion for reconsideration. Mr. Daniels then appealed to this court. While this first appeal was pending, Mr. Daniels died, and the administrator of his estate, John E. Coker, was substituted as the defendant/appellant.

After this court heard argument, the defendant/appellant advised the court of newly discovered evidence in the case, a copy of the City & County Bank of Knox County cashier's check issued to Mr. Daniels on February 18, 1983. This court ruled that the defendant/appellant should present his Bankr.R. 9024/Fed.R.Civ.P. 60(b)(2) motion to the bankruptcy court in the first instance, and therefore remanded the case for consideration of this motion.

On remand, the bankruptcy court conducted an evidentiary hearing in November, 1991, limited to the issues raised by the Rule 60(b)(2) motion. The bankruptcy court concluded that there was a lack of due diligence with regard to the discovery of the copy of the cashier's check, and that, in any event, this evidence was not material, because it was insufficient to require the court to change its previous ruling. The bankruptcy court therefore denied Mr. Coker's motion, and he then appealed to this court.

Mr. Coker's Bankr.R. 8006 statement of the issues to be presented on appeal is:

Did the Bankruptcy Court erroneously base its summary judgment in favor of Appellee on numerous earlier orders which were of no effect to this adversary proceeding, as no separate documents were filed nor were any docket entries made concerning those orders, such that an improper conclusion of law was made?

Did the Bankruptcy Court abuse its discretion in failing to find the cashier's check constituted newly discovered evidence, and to thereby fail to vacate the underlying judgment and order a new trial?

Was summary judgment in favor of Appellee proper when the existing record shows Appellant withdrew money from his "VIP" account with Debtor in strict accordance with the contractual terms of the deposit agreement, such that the withdrawal occurred in the ordinary course of business of Debtor and Appellant?

Was summary judgment in favor of Appellee proper when Appellee failed to meet his burden of proof in establishing all elements of a preferential transfer under 11 U.S.C. § 547?

Was summary judgment in favor of Appellee proper when in accordance with the Debtor's instructions, Appellant exchanged the Debtor's check for a cashier's check drawn upon a third party with Appellant designated as the sole payee, such that no property of the Debtor was transferred nor did Appellant receive more property than he would have received in a Chapter 7 liquidation?

Was Appellee entitled to summary judgment when the supporting affidavits for his Motion for Summary Judgment failed to be made on personal knowledge of any of the facts concerning this adversary proceeding, nor did the affidavits show affirmatively that the affiants were competent to testify to the matters stated therein?

Did the Bankruptcy Court commit error in relying upon Appellee's affidavits in granting summary judgment, when one of Appellant's defenses involved subjective intentions of both Appellant and Debtor such that a credibility determination during in-court testimony was necessary?

Mr. Coker did not repeat this last issue in his brief on appeal filed in this court.

## I

The court can address quickly the first two issues stated above. It is unnecessary to address in this case any alleged error in the procedure followed by the bankruptcy court below in consolidating, for the purpose of deciding common issues of fact, the numerous adversary proceedings brought by the liquidating trustee against the former customers of SIBC who received payments from the debtor within 90 days before it filed its petition in bankruptcy. Whatever the propriety of this procedure, the presumption provided by 11 U.S.C. § 547(f) and the evidence contained in the record of this case are sufficient to support the bankruptcy court's award of summary judgment in favor of Mr. DuVoisin. There is no need to refer to the bankruptcy court's opinions and orders filed in the consolidated proceedings.

The court notes in passing that the defendant/appellant's reliance on Bankr.R. 9021, 9022 and 5003 is misplaced. The provision of Rule 9021 that "[e]very judgment entered in an adversary proceeding or contested matter shall be set forth on a separate document" comes from subdivision (a) of the rule before its 1987 amendment. The advisory committee note to former Rule 9021(a) states,

> This rule is derived from Rule 58 F.R.Civ.P. The requirement that a judgment entered in an adversary proceeding or contested matter be set forth on a separate document is to eliminate uncertainty as to whether an opinion or memorandum of the court is a judgment. There is no sound reason to require that every order in a case under the Code be evidenced by a separate document.

Mr. Coker overlooks this distinction, highlighted by the advisory committee, between a judgment and an interlocutory ruling, opinion, memorandum or order. The bankruptcy court had the authority under the rules to consolidate the adversary proceedings before it for the adjudication of such common issues of fact as whether SIBC was insolvent throughout the 90 days preceding its bankruptcy, and whether any withdrawals of funds from SIBC at any time during this 90–day period might have been in the ordinary course of business of SIBC and of the withdrawing customers. In this respect, the bankruptcy court's practice was similar to that followed by district courts in consolidating civil actions for the purpose of hearing or trying common issues, then entering separate judgments in the actions when adjudication is complete. Fed.R.Civ.P. 42(a) and 58.

Bankr.R. 5003(a) requires the clerk to "keep a docket in each case under the Code." Mr. Coker's argument that the bankruptcy court failed in the performance of this duty to the extent that it did not file in each of the consolidated adversary proceedings copies of its written rulings on the common issues ignores the fact that "case" is a term of art in bankruptcy practice. A case in bankruptcy is the proceeding involving the liquidation or reorganization of a debtor or the adjustment of the debtor's debts. *See* 11 U.S.C. § 301:

> A voluntary case under a chapter of this title is commenced by the filing with the bankruptcy court of a petition under such chapter by an entity that may be a debtor under such chapter. The commencement of a voluntary case under a chapter of this title constitutes an order for relief under such chapter.

The case is to be distinguished from the adversary proceeding, Bankr.R. 7001, and from the contested matter, Bankr.R. 9014, both of which arise in the case under the Bankruptcy Code. *Cf.* 28 U.S.C. § 157(a): "Each district court may provide that any or all *cases under title 11* and any or all *proceedings arising under title 11* or *arising in or related to a case under title 11* shall be referred to the bankruptcy judges for the district." (Emphasis added.)

Because the court finds the record in this adversary proceeding sufficient to support the summary judgment awarded by the bankruptcy court, it is unnecessary to decide whether the late Mr. Daniels had adequate notice of the proceedings in the consolidated adversary proceedings, an issue which is distinct from the one raised erroneously by the defendant/appellant under Bankr.R. 9021, 9022 and 5003. Nothing stated by the court here concerning the propriety of consolidat-

ing adversary proceedings under Bankr.R. 7042, and concerning the proper construction of the docketing and separate document requirements of the other rules, is intended to express an opinion on yet another issue, whether the bankruptcy court properly decided certain issues in the consolidated adversary proceedings without a jury. *See Granfinanciera, supra;* and *Rafoth v. National Union Fire Insurance Company (In re Baker & Getty Financial Services, Inc.),* 954 F.2d 1169 (6th Cir.1992). Because the court finds the bankruptcy court's award of summary judgment in this case fully supported, this issue does not arise in this case.

■ Turning to the second issue stated by the defendant/appellant, whether the bankruptcy court abused its discretion in not treating Mr. Daniels' copy of the City & County Bank cashier's check as newly discovered evidence, this issue is moot. On appeal from an award of summary judgment, this court must review *de novo* the bankruptcy court's determination, and apply the same test as that applied by the bankruptcy court, which requires that the inferences to be drawn from the underlying facts be viewed in the light most favorable to the opponent of the motion. *See Davidson & Jones Development Company v. Elmore Development Co., Inc.,* 921 F.2d 1343, 1349 (6th Cir.1991) (citations omitted). In this case, the court will treat the legitimate inferences to be drawn from the cashier's check as established, which has the effect of accepting the check as late-discovered evidence. Because the court finds that the inferences to be drawn from this check do not change the outcome in this case, the bankruptcy court below did not err in its ruling under Bankr.R. 9024/Fed.R.Civ.P. 60(b).

## II

The court can also address quickly the sixth and seventh issues stated by the defendant/appellant. Mr. Coker says that Mr. DuVoisin was not entitled to summary judgment because the affidavits which the latter submitted in support of his motion were not made on the personal knowledge of the affiants, and did not show the affiants' competence to testify. He says also that the bank-

ruptcy court erred in granting Mr. DuVoisin's motion because Mr. Daniels' ordinary course of business defense required a credibility determination which could not be made without a trial.

■ Fed.R.Civ.P. 56(e) requires in part,

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment if appropriate, shall be entered against the adverse party.

Mr. Coker appears to argue that in this case, this requirement means that Mr. DuVoisin or one of the other affiants must have been present when Mr. Daniels withdrew his funds from SIBC. This reads too much into the language of the rule.

■ Mr. DuVoisin made his affidavit on the basis of SIBC's records, of which he was the custodian because of his appointment as the debtor's liquidating trustee. He therefore had personal knowledge of what the records in his custody showed. The fact that, upon examination by Mr. Coker's counsel at the hearing held after remand to the bankruptcy court on the defendant/appellant's Bankr.R. 9024/Fed.R.Civ.P. 60(b) motion, Mr. DuVoisin could not recall what was contained in the records concerning Mr. Daniels' account which he had reviewed before he made his affidavit does not impeach his affidavit testimony; it shows only that Mr. DuVoisin's recollection needed to be refreshed. The question is not whether Mr. DuVoisin or any other affiant was present when the transaction between SIBC and Mr. Daniels occurred, but, instead, is whether the evidence which these affiants can supply on their personal knowledge is sufficient to support the summary judgment awarded by the bankruptcy court. This court holds that it is. This court finds no serious contest in this case concerning the competence of the affi-

ants to testify as they did in support of the liquidating trustee's motion.

As for the credibility issue, there is none. Section 547(c)(2) requires, for its exception to the rule of avoidability of preferences to apply, that the transfer have been made "in the ordinary course of business or financial affairs *of the debtor and* the transferee."[2] (Emphasis added.) The evidence submitted by Mr. DuVoisin in support of his motion, which remains uncontroverted, shows that SIBC delivered a check to Mr. Daniels in the course of a run on this industrial loan and thrift company, hardly the ordinary course of business for any financial institution. Whether the receipt of this check was in the ordinary course of Mr. Daniels' business, and what Mr. Daniels then believed about SIBC's course of business, are thus irrelevant. As United States Bankruptcy Judge George C. Paine, II stated in considering this issue in several consolidated adversary proceedings which arose in SIBC's case in bankruptcy, "It is only necessary to find the transfer was outside the ordinary course of business of one party to the transaction to deny protection of the § 547(c)(2) exception." *DuVoisin v. Anderson (In re Southern Industrial Banking Corporation)*, 92 B.R. 297, 306 (Bankr.E.D.Tenn.1988).

### III

Mr. Coker's third issue on appeal, whether summary judgment was proper when the record showed that Mr. Daniels withdrew money from his VIP account with SIBC "in strict accordance with the contractual terms of the deposit agreement," merits little discussion. To the extent that this issue arises under the ordinary course of business exception to the rule of avoidability of preferences, the court has addressed it already. To the extent that it is an argument that the liquidating trustee's claim is barred because Mr. Daniels had, in the absence of SIBC's bankruptcy, a contractual right to do what he did, this reveals a misunderstanding of the nature of an avoidable preference.

Accepting for the purpose of argument on this issue the defendant/appellant's characterization of the pertinent facts, the court still must find that Mr. Daniels ended up in the position of any recipient of a preferential transfer: he had a contractual right to receive the transfer, it was not otherwise unlawful, but, upon the transferor's bankruptcy, he became liable for its return for the benefit of all of the creditors of his debtor. This is of the essence of a preference, as opposed to a fraudulent conveyance, a distinction recognized long before the adoption of the modern Bankruptcy Code:

> But the two purposes [that is, to defraud and to prefer] are not of the same quality, either in conscience or in law, and one may exist without the other. The statute recognizes the difference between the intent to defraud and the intent to prefer, and also the difference between a fraudulent and a preferential conveyance. One is inherently and always vicious; the other innocent and valid, except when made in violation of the express provisions of a statute. One is *malum per se* and the other *malum prohibitum,*—and then only to the extent that it is forbidden. A fraudulent conveyance is void regardless of its date; a preference is valid unless made within the prohibited period. It is therefore not in itself unlawful to prefer, nor fraudulent for one, though insolvent, to borrow in order to use the money in making a preference.

*Van Iderstine v. National Discount Company*, 227 U.S. 575, 582, 33 S.Ct. 343, 344, 57 L.Ed. 652 (1913).

This distinction between a preference and a fraudulent conveyance shows why it is irrelevant that a preference was in accordance with a contract between the transferor and the transferee. The defendant/appellant is in the position of any trade creditor which has received from its bankrupt debtor a payment outside the ordinary course of business and within the preference period. In any such case, the fact that the payment

**2.** This requirement is stated currently in 11 U.S.C. § 547(c)(2)(B). In the version of the statute which applies in this case, the version which existed before the 1984 amendments, it is stated in the same language in § 547(c)(2)(C).

was made "in strict accordance" with a prepetition obligation of the debtor provides no defense against a trustee's claim to recover the preference.

## IV

The court can consider together the defendant/appellant's fourth and fifth contentions on appeal, that the liquidating trustee failed to establish all of the elements of a preference, and that there was no transfer of the debtor's property to Mr. Daniels. The latter contention states the central issue in this case.

The elements of a preference are stated in *Mandross v. Peoples Banking Company (In re Hartley)*, 825 F.2d 1067, 1069 (6th Cir. 1987):

(1) a transfer of property of the debtor;

(2) to or for the benefit of a creditor;

(3) for or on account of an antecedent debt owed by the debtor before the transfer was made;

(4) made while the debtor was insolvent;

(5) made on or within ninety days before the date of the filing of the petition, or between ninety days and one year before the date of the filing if the creditor is an insider; and

(6) the transfer enables the creditor to receive more than such creditor would receive if

(A) the case were a case under Chapter 7 of Title 11;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by Title 11.

Setting aside for a moment the issue whether there was a transfer of property of the debtor, it can be seen readily that the uncontroverted evidence in this case proved the existence of all of the other elements. The check which Mr. Daniels received was drawn to his order, and satisfied an antecedent debt, the one created when Mr. Daniels opened his VIP account. The statutory presumption of SIBC's insolvency throughout the relevant time period, 11 U.S.C. § 547(f), was not rebutted or even called into question by any

evidence in the record. There is no dispute in this case concerning the relevant dates, and no dispute that Mr. Daniels obtained both SIBC's check and the City & County Bank cashier's check within the 90–day period set by § 547(b)(4)(A).

The defendant/appellant argues that there is no proof in this record of the sixth element, that Mr. Daniels received more than he would have received as a creditor of SIBC in a liquidation case under chapter 7 of the Bankruptcy Code. Yet the undisputed evidence is that SIBC was insolvent "on and during the 90 days immediately preceding the date of the filing of [its] petition [in bankruptcy]," § 547(f), and that Mr. Daniels received payment in full, with interest, of his entire claim against this debtor. "Unless the estate is sufficient to provide a 100% distribution, any unsecured creditor ... who receives a payment during the preference period is in a position to receive more than it would have received under a Chapter 7 liquidation." *Still v. Rossville Bank (In re Chattanooga Wholesale Antiques, Inc.)*, 930 F.2d 458, 465 (6th Cir.1991) (citation omitted).

The court therefore comes to the defendant/appellant's chief argument, that this transaction involved no transfer of property of the debtor. Viewing all of the evidence in the light most favorable to the defendant/appellant, the facts are that SIBC delivered to Mr. Daniels its check drawn on City & County Bank, with the instruction to take the check to the drawee bank, and to exchange it there for a cashier's check drawn by City & County Bank on itself (as any cashier's check, by definition, is). The court will further treat as established that the representative of SIBC with whom Mr. Daniels dealt gave this instruction concerning the cashier's check because there was a risk that SIBC's check would bounce if it were deposited and then transmitted for collection through customary banking channels. Mr. Daniels followed this instruction, and obtained City & County Bank's cashier's check for the same amount as SIBC's check drawn to his order. The defendant/appellant's argument is that in the absence of some evidence, such as a book entry, that City &

County Bank debited an account belonging to SIBC when it issued this cashier's check, there is a genuine issue whether City & County Bank merely substituted itself in Mr. Daniels' place as a creditor of SIBC, so that Mr. Daniels received none of the debtor's property.

In response to this argument, Mr. DuVoisin relies in part on this court's ruling in *DuVoisin v. Avery (In re Southern Industrial Banking Corporation)*, 120 B.R. 921 (E.D.Tenn.1989), *affirmed without opinion*, 917 F.2d 24 (6th Cir.1990). In *Avery*, the customer of SIBC who was the transferee of the alleged preference returned to SIBC after the industrial loan and thrift company's check drawn to her order had been returned for insufficient funds. She refused to accept a City & County Bank cashier's check in exchange for SIBC's NSF check. Upon her refusal to accept the cashier's check, an officer or employee of SIBC delivered cash to her to pay in full the amount of the NSF check.

This court, affirming the bankruptcy court, held that the only reasonable inference from the undisputed evidence was that SIBC had borrowed money from or otherwise incurred an obligation to City & County Bank to obtain the cashier's check, and then cash, for its customer. The court recognized that had the customer not demanded cash instead of the cashier's check, she might have had a stronger argument that the transaction was not a transfer to her of property of SIBC, but rather was a substitution of City & County Bank in her place as SIBC's creditor. SIBC having paid her in cash, however, the court could not accept the contention that City & County Bank had somehow earmarked the money for her. "The only reasonable inference is the opposite of the one urged by the appellant: by turning over those most fungible of commodities, currency and coin, to a SIBC officer, C & C gave up any control of the disposition of those assets freshly added to the wealth of SIBC." *DuVoisin v. Avery, supra*, 120 B.R. at 924.

In the case at bar, SIBC did not deliver City & County Bank's cashier's check to Mr. Daniels. He obtained the check directly from City & County Bank, by exchanging for it SIBC's check drawn on City & County Bank. Had City & County Bank paid SIBC's check in cash, there would be no question that there was a transfer of property of SIBC to Mr. Daniels. *See Barnhill v. Johnson*, 503 U.S. 393, 399, 112 S.Ct. 1386, 1390, 118 L.Ed.2d 39 (1992):

> We thus believe that when the debtor has directed the drawee bank to honor the check *and* the bank has done so, the debtor has implemented a "mode, direct or *indirect* ... of disposing of property or an interest in property." 11 U.S.C. § 101(54) (emphasis added). For the purposes of payment by ordinary check, therefore, a "transfer" as defined by § 101(54) occurs on the date of honor, and not before.

(Emphasis in original.)

The question presented, therefore, is whether the drawee bank's issuance of a cashier's check drawn on itself in exchange for a check drawn on it by its customer (SIBC) is the equivalent of payment in cash for the purpose of the "transfer of an interest in property of the debtor" element of § 547(b).

> A cashier's check is a draft drawn by a bank as the drawer upon itself as the drawee. In the ordinary course of banking transactions, the remitter, which is the entity which obtains the cashier's check in order to satisfy its obligation owed to a third party, "buys" the cashier's check from the drawer/drawee bank, either by transferring cash to the drawer/drawee bank in exchange for its issuance of the cashier's check, or by incurring an obligation to the drawer/drawee bank.

*DuVoisin v. Avery, supra*, 120 B.R. at 923, *citing* 6 MICHIE ON BANKS AND BANKING ch. 12, § 13 (1975 perm. ed.). "[T]he public treats cashier's checks as the equivalent of cash." J. White & R. Summers, HANDBOOK OF THE LAW UNDER THE UNIFORM COMMERCIAL CODE at 681 n. 110 (West 2d ed. 1980) (stated in the context of rejecting the assertion that the customer can compel his or her bank to stop payment on a cashier's check).

The court cannot hold otherwise than that a cashier's check is the equivalent

of cash for the purpose of satisfying the § 547(b) element of a transfer of property of the debtor. It is clear from *Barnhill v. Johnson, supra,* that a trustee who has shown the payment within the preference period of a check drawn by the debtor is not required to go further and prove that the drawee bank charged the debtor's account. The transferee of a preference will not be permitted to prevent a recovery by a trustee or debtor-in-possession on the basis of speculation, contrary to the ordinary rules of commerce, that the debtor's bank made final payment of the debtor's check without a corresponding charge against either the debtor's account or a credit in favor of the debtor, which is in either case a transfer of property of the debtor. *See Prudential Insurance Company of America v. Nelson (In re Chickamauga Trust Co.),* 96 F.2d 487, 490 (6th Cir.1938) (citations omitted) (the fact that the transferee of the preferences in issue was paid by checks drawn against deposit balances established with credits extended on the security of certain hypothecated notes and mortgages and a check on insufficient funds in an out-of-state trust company account did not mean that the depositaries which had extended the credits simply substituted themselves in the transferee's place as creditors; the money which the transferee received was nonetheless property of the debtor). There is no good reason to permit such speculation to overcome a right of recovery when payment is in the form of a cashier's check, a direct obligation of the issuing bank, instead of cash.

 There is no evidence in this record that even if City & County Bank was extending credit to SIBC by issuing cashier's checks, instead of issuing such checks against a cash deposit made earlier by SIBC, the industrial loan and thrift company had any control with respect to which of its customers obtained cashier's checks from its drawee bank. The advice given by the SIBC officer or employee to Mr. Daniels was, in essence, to avoid customary banking channels and to get his money—or the equivalent of cash—first. This was advice to participate in the classic rush to dismantle an insolvent debtor which the rule of avoidability of preferences is designed to undo. There is therefore no

ground for invoking the earmarking exception, *see In re Hartley, supra,* to the rule of avoidability of preferences. The bankruptcy court in this case properly awarded summary judgment in favor of the liquidating trustee, and this court will affirm it.

### ORDER

For the reasons stated in the court's memorandum opinion filed simultaneously with this order, the Order on Motion for Summary Judgment and Final Judgment entered in this adversary proceeding by the United States Bankruptcy Court for the Eastern District of Tennessee on October 11, 1989, the Order entered by the bankruptcy court on December 1, 1989 denying the defendant/appellant's motion for reconsideration of this judgment, and the Order entered by the bankruptcy court on January 15, 1992 denying the defendant/appellant's motion for relief from the judgment on the ground of newly discovered evidence are **AFFIRMED** under Bankr.R. 8013.